Linda STOUT, etc., et al.,
Plaintiffs–Appellants,

United States of America,
Plaintiff–Intervenor–Appellee,

v.

JEFFERSON COUNTY BOARD OF EDUCATION, et al.,
Defendants–Appellees.

No. 87–7516.

United States Court of Appeals,
Eleventh Circuit.

May 27, 1988.

Donald V. Watkins, Montgomery, Ala., Norman J. Chachkin, New York City, for plaintiffs-appellants.

Samuel Fisher, Asst. City Atty., Law Dept., City of Birmingham, Birmingham, Ala., for other interested party.

Carl E. Johnson, Jr., Bishop, Colvin & Johnson, Burgin H. Kent, Birmingham, Ala., for Jefferson County Bd. of Educ.

Before KRAVITCH, Circuit Judge, HENDERSON* and HENLEY**, Senior Circuit Judges.

KRAVITCH, Circuit Judge:

Plaintiffs are minor black schoolchildren residing in Dolomite, an area recently annexed from Jefferson County into the city of Birmingham, Alabama. Since 1972 plaintiffs have been assigned, under federal court order, to attend schools in the Pleasant Grove attendance area of the Jefferson County school system. After Dolomite was annexed to Birmingham, plaintiffs were reassigned to heavily black schools in Birmingham, leaving the Pleasant Grove schools between 94 and 97 percent white. Plaintiffs sought an injunction to allow them to remain in the Jefferson County school system. They appeal from the district court's denial of their requested relief. We affirm.

## I.

The history of this litigation may be traced to 1965, when an action seeking to desegregate the public schools of Jefferson County, Alabama, was filed on behalf of a class of black schoolchildren. The litigation resulted in a 1971 remedial desegregation plan assigning the black students living in the Dolomite community to attend schools in Jefferson County's Pleasant Grove school district.[1] The Pleasant Grove schools attended by Dolomite students are currently integrated with ratios ranging from 71 percent white/29 percent black to 80 percent white/20 percent black, and the schools are located so as not to require extensive busing of Dolomite students.

In March of 1987, part of the Dolomite community voted to be annexed to the City of Birmingham. Later that year, other residents of Dolomite petitioned to join Birmingham, which has its own school system separate from that of Jefferson County. Annexation to Birmingham afforded Dolomite residents the police and fire protection they had previously lacked.

In Alabama, city school districts normally expand to accommodate students residing in areas newly annexed to the city. *See* Ala. Code §§ 16-8-20, 16-11-9 (1988); *Brown v. Board of Education of Bessemer*, 808 F.2d 1445, 1446 (11th Cir.1987). In June of 1987, the Jefferson County Board of Education notified the parents of children living in the annexed sections of Dolomite that their children would not be admitted to Jefferson County schools in the fall unless they paid a tuition of $450. The Birmingham Board of Education subsequently informed the parents that their children would be enrolled in Birmingham schools. The population of the Birmingham school system, which is no longer under federal court supervision, is 84 percent black overall, but virtually all of the students at the three schools to which appellants have been assigned are black. The

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The City of Pleasant Grove had been enjoined from operating its own school system.

removal of appellants from the Pleasant Grove schools would leave those schools ranging from 94 percent to 97.7 percent white.

In August, appellants filed a motion for a temporary restraining order and a motion for further relief, seeking preliminary and permanent injunctive relief to prevent Jefferson County from excluding them from its Pleasant Grove schools "until such time as the Jefferson County School System is judicially declared to be 'unitary' and the 1987 annexations of the Dolomite community have been 'pre-cleared' by the United States Attorney General." [2] Although the district court found that the annexations would have a significant impact on the affected school populations, it declined to grant relief. The court noted that even though the Birmingham schools to which appellants have been assigned are attended almost exclusively by black students, the Birmingham school system nonetheless has been declared "unitary." Additionally, it found that the change in attendance districts in this case had in no way been caused by the Jefferson County Board of Education. Finally, because the Jefferson County Board of Education was following its consistently applied policy—that upon annexation to a city, former county students would be educated by the annexing city if that city had its own school system— the court concluded that relief should be denied.

## II.

### A.

Appellants initially argue that the Dolomite students should not have been reassigned to Birmingham schools before the United States Justice Department pre-cleared the annexation pursuant to section five of the Voting Rights Act, 42 U.S.C. § 1973c.[3] During the pendency of this appeal, however, the Attorney General pre-cleared the annexation. Accordingly, this issue is moot.

### B.

Second, appellants contend that because the Jefferson County school district is still subject to federal court desegregation orders,[4] the district court had the equitable

2. On appeal, appellants have urged that the terms of the requested injunction should extend beyond any future finding that the Jefferson County schools have attained unitary status. Rather, they submit that Jefferson County should continue to educate them until their reassignment would not substantially dilute the level of desegregation in the Pleasant Grove schools.

3. This section provides in part:
   Whenever a State or political subdivision ... shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1964 ... such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification ... does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color ... and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification ...; *Provided,* that such qualification ... may be enforced without such proceeding if the qualification ... has been submitted by the chief legal officer or other appropriate official ... to the Attorney General

and the Attorney General has not interposed an objection within 60 days after such submission or upon good cause shown, to facilitate an expedited approval within 60 days after such submission, the Attorney General has affirmatively indicated that such objection will not be made....

4. Appellants in fact have argued that the Jefferson County school system has not yet been declared "unitary." As appellees point out, however, our former circuit declared the school system to be unitary in *Stout v. Jefferson County Board of Education,* 537 F.2d 800 (5th Cir.1976). In the earlier suit the court stated that it agreed with the district court "that the former dual school system has been effectively dismantled and a unitary system substituted here." 537 F.2d at 802. Nevertheless, the court qualified its finding, making it quite clear that it was reluctant to affirm the district court's order allowing three one-race schools to exist in the district. Accordingly, the court ordered that the school system "must continue under the scrutiny and surveillance of the district court." *Id.* at 803. The requirement for such continued supervision evidently prompted the court's statement in *Brown v. Board of Education of Bessemer,* 808 F.2d 1445, 1446 (11th Cir.1987) that the Jefferson County school system has not yet been declared unitary.

power—and duty—to ensure that the changes in school district boundaries did not substantially impede or dilute school desegregation. Citing *Wright v. Council of the City of Emporia*, 407 U.S. 451, 460, 92 S.Ct. 2196, 2202, 33 L.Ed.2d 51 (1972), they argue that when a change in school boundaries is attempted, "[i]f the proposal would impede the dismantling of the dual system, then a district court ... may enjoin it from being carried out."

■ Because the relief they suggest would require the transfer of students from one school district to another, appellants are requesting an interdistrict remedy. Interdistrict relief is inappropriate absent a demonstration of an interdistrict violation and an interdistrict effect. *Milliken v. Bradley*, 418 U.S. 717, 745, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974). As Justice Stewart, one of the five Justices in the majority, explained in a concurring opinion, "Were it to be shown ... that state officials had contributed to the separation of the races by drawing or redrawing school district lines ... or by purposeful racially discriminatory use of state housing or zoning laws, then a decree calling for transfer of pupils across district lines ... might well be appropriate." 418 U.S. at 755, 94 S.Ct. at 3132.

■ Appellants argue that it is possible to find an interdistrict violation in this case. They point to Pleasant Grove's alleged continuing efforts to discriminate. After first making an unsuccessful request to be annexed to Birmingham, Dolomite citizens petitioned in 1979 to annex their community to Pleasant Grove. Pleasant Grove not only refused to annex the area, but also terminated the fire and paramedic protection that it had previously provided. Five people died in fires after this protection was terminated. Dolomite residents subsequently petitioned to be annexed to two other municipalities before finally succeeding, upon a second attempt, with annexation to Birmingham. Appellants further point to a recent Supreme Court decision, *Pleasant Grove v. United States*, 479 U.S. 462, 107 S.Ct. 794, 93 L.Ed.2d 866 (1987), where the Court noted that Pleasant Grove

has been described as "an all-white enclave in an otherwise racially mixed area," and that the city has a long history of discrimination in housing, zoning, hiring, and school policies. 479 U.S. at —— - ——, 107 S.Ct. at 796–97, 93 L.Ed.2d at 872–73 (1987).

Appellants contend that but for the racially motivated refusal of Pleasant Grove to annex Dolomite, the Dolomite students would remain in the Pleasant Grove schools today, as the annexation to Birmingham never would have occurred. Accordingly, they assert that the standard for relief set forth in *Milliken v. Bradley* has been met, as state actors have contributed to significant changes in the racial composition of county schools for racially discriminatory reasons. Appellants' argument overlooks, however, a significant gap in their alleged chain of causation. Prior to requesting annexation to Pleasant Grove, they had requested to be annexed to Birmingham but had been denied. Similarly, after the Pleasant Grove denial, they had requested annexation to two other cities before finally being accepted by Birmingham. Based on these facts, we cannot accept their argument that but for Pleasant Grove's refusal to annex them, they would have remained in Pleasant Grove schools; following their line of reasoning, but for Birmingham's initial refusal to annex them, they would never even have requested annexation to Pleasant Grove.

■ Appellants' preferred argument, however, is that their requested relief is intradistrict in nature because, although such relief would affect both Jefferson County and Birmingham schools, the injunction sought is simply a means of ensuring that the original desegregation order for Jefferson County is not eviscerated. They argue that such relief is supported by this court's decision in *Brown v. Board of Education of Bessemer*, 808 F.2d 1445 (11th Cir.1987), which affirmed a district court order delaying the entry into the Bessemer schools of some students living in an area recently annexed from Jefferson County to Bessemer.

Although the court in *Bessemer* characterized that case as involving intradistrict desegregation, we agree with the district court that the *Bessemer* decision is factually distinguishable and cannot provide a foundation for granting relief in this case. The City of Bessemer, in July of 1985, had obtained district court approval of an integration plan that would require closing one all-black school and extensive construction at other city schools. Bessemer was able to obtain an $800,000 state grant to aid in the enactment of this plan. Before the plan was implemented, however, annexation elections were held pursuant to a consent decree in an unrelated lawsuit between the City of Bessemer and residents of areas outside the city limits. *Tolbert v. City of Bessemer*, Nos. CV-83-P-3050-S, CV-84-P-0893-S. The *Tolbert* plaintiffs had alleged that Bessemer had actively sought to annex predominantly white areas while refusing to annex areas populated by black persons. After the annexation elections in February and March of 1986, two areas, designated "Parcels A and B," were annexed to Bessemer. Because, as stated previously, Alabama city school districts ordinarily expand with annexations to the relevant city, approximately 200 children from Parcel A and 700 children from Parcel B became eligible to attend Bessemer, as opposed to Jefferson County, schools.

This court affirmed the district court's order directing Bessemer to accept immediate responsibility for educating the students living in Parcel A, but delaying the entry of the Parcel B children into the Bessemer schools until desegregated facilities there could adequately accommodate them. The court found that although Bessemer could adequately accommodate the Parcel A students, its immediate acceptance of the Parcel B students would prevent it from operating a unitary system under the approved desegregation plan. The court explained:

Bessemer would not be able to accommodate the [Parcel B] students without keeping Abrams High School open, contrary to the court-approved desegregation plan. Moreover, if Abrams continued to operate, Bessemer would lose its

consolidation grant from the State of Alabama. Without that grant, and with the added expense of renovating and maintaining Abrams High School, Bessemer would be unable to construct additional facilities at its desegregated schools and its progress toward a unitary system would be severely impeded, if not completely stalled. If, however, Jefferson County retained the students from Parcel B, Bessemer would be able to close Abrams High School and, with construction funded by the consolidation grant, would be able to accommodate the students from Parcel B in desegregated schools in two to four years.

808 F.2d at 1445. Accordingly, the court found that granting the injunction was within the equitable powers of the district court, which was already supervising the desegregation plans in the affected school district. The court emphasized that the injunction placed no burden on Jefferson County, which would continue to receive the revenues allocated for educating the students, and stressed that the measure was simply a "stopgap," and that the Bessemer Board of Education had "a duty to move speedily to accommodate all students residing within the City's borders in the City's own schools." *Id.* at 1449.

Although appellants in this case similarly characterize their requested relief as merely a maintenance of the status quo, the circumstances in this case do not warrant the relief they request. None of the compelling justifications in *Bessemer* are present here: in contrast to the Bessemer school district, the Birmingham school system has been declared unitary and is fully willing and able to accommodate the Dolomite students. While we agree that it is extremely unfortunate that the Birmingham schools to which the Dolomite students will be transferred are predominantly of one race, that school system nevertheless has been declared unitary. Moreover, this court's decision in *Bessemer* was specifically temporary in design; in contrast, appellants here seek what could amount to a permanent injunction, asking that the Dolomite students should be assigned to

Pleasant Grove schools not merely until the Jefferson County school system attains unitary status, but rather until the reassignment of Dolomite students to Birmingham would not substantially dilute the level of desegregation in the Pleasant Grove schools. *Bessemer* simply does not provide the foundation for such a grant of relief. To create from *Bessemer* a rule requiring selective recognition of annexation for school purposes is contrary to the principle clearly stated in *Milliken:*

> Boundary lines may be bridged where there has been a constitutional violation calling for interdistrict relief, but the notion that school district lines may be casually ignored or treated as a mere administrative convenience is contrary to the history of public education in our country. No single tradition in public education is more deeply rooted than local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public schools and to quality of the educational process.

418 U.S. at 741–42; 94 S.Ct. at 3125–26.

### III.

For the foregoing reasons, the decision of the district court is AFFIRMED.